# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 7, 2019        Decided April 16, 2019

No. 18-3043

UNITED STATES OF AMERICA,
APPELLEE

v.

JOHN WAYNE SCANTLEBURY, ALSO KNOWN AS FREDERICK DAVIS, ALSO KNOWN AS JOHN WAYNE TROTMAN,
APPELLANT

———

Consolidated with 18-3044

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:04-cr-00285-3)
(No. 1:04-cr-00285-4)

———

*Lawrence J. Joseph* argued the cause and filed the briefs for appellants.

*Vijay Shanker*, Attorney, U.S. Department of Justice, argued the cause and filed the brief for appellee.

Before: PILLARD and KATSAS, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*:  In 2004, Appellants, John Wayne Scantlebury ("Scantlebury") and Sean Gaskin ("Gaskin"), who are residents of Barbados, along with another Barbadian resident – Frederick Christopher Hawkesworth ("Hawkesworth") – and two Guyanese residents, were indicted by a grand jury in Washington, D.C., for conspiracy to traffic cocaine. Scantlebury, Gaskin, and Hawkesworth (who is now deceased) all challenged extradition to the United States. The disputes over extradition lasted for over nine years. Finally, in December 2013, the U.S. Government moved to dismiss the charges against Scantlebury, Gaskin, and Hawkesworth without prejudice, citing "the age of the case, government resources, and other factual and legal issues which indicate the case is no longer viable." Joint Appendix ("J.A.") 41. The District Court granted the Government's motion to dismiss on January 9, 2014.

Appellants argue that prosecutors in the United States knew for years, well before they moved to dismiss the charges, that the cases had "cratered" and that there was no probable cause to support the indictments. Appellants therefore assert that the District Court should have dismissed the indictments with prejudice. On appeal, Appellants seek a remand to the District Court with instructions to dismiss the charges with prejudice. The Government in turn contends that this court has no basis upon which to entertain this appeal. We agree with the Government.

First, we are bound by the Supreme Court's decision in *Parr v. United States*, 351 U.S. 513 (1956). In *Parr*, the Court held that, without more, a criminal defendant whose indictment is dismissed without prejudice is not aggrieved and, therefore,

has no standing to appeal. *Id*. at 516–17. Second, even assuming, *arguendo*, that the threat of subsequent prosecution might be sufficient in some cases to support an appeal of a dismissal without prejudice, the statute of limitations has run on the charges against Appellants, so the question is moot. Third, Appellants assert ongoing reputational injuries allegedly caused by their arrest and indictment records. But they lack standing to pursue these claims because dismissing the indictment with prejudice would not redress the alleged reputational harms. Finally, we hold that the court lacks jurisdiction to consider Appellants' request for declaratory relief.

## I. BACKGROUND

The U.S. Government began investigating Hawkesworth for cocaine trafficking in 2000. The Government suspected that Raphel Douglas ("Douglas") and Terrence Sugrim ("Sugrim") were supplying cocaine from Guyana to Hawkesworth. And Appellants were suspected of assisting Hawkesworth in an international drug trafficking operation that distributed cocaine in Barbados and transported cocaine from Barbados and Guyana to the United States.

As part of its investigation, the Government worked with an unnamed confidential informant. The informant allegedly spoke with Appellants and Hawkesworth on several occasions and made plans to help them transport cocaine to the United States.

In 2004, a federal grand jury in Washington, D.C., returned a two-count indictment against Scantlebury, Gaskin, Hawkesworth, Douglas, and Sugrim. The first count alleged that all five defendants had conspired to distribute more than five kilograms of cocaine. The second count alleged that

Hawkesworth and Douglas distributed 500 grams or more of cocaine. With respect to Appellants specifically, the indictment alleged that they "obtained false identification cards and documents in order to travel to the United States to facilitate the importation of cocaine from Barbados, Guyana and elsewhere into the United States." J.A. 35. The indictment stated that Hawkesworth was the leader of the organization, which had allegedly shipped 184 kilograms of cocaine from Guyana to JFK Airport in New York City. The indictment also alleged that Scantlebury and Gaskin met with the informant to discuss whether contacts were in place for a test shipment of cocaine and that the informant provided Scantlebury and Gaskin with fake identification cards.

Following indictment, the Government sought extradition of Scantlebury, Gaskin, and Hawkesworth from Barbados and Douglas and Sugrim from Guyana. Douglas was extradited, but Sugrim was never taken into custody. The three Barbadian defendants were arrested by Barbadian law enforcement officials, but they challenged extradition and remained in Barbados. All three were released on bail in late 2004 or early 2005. Then, for reasons that are not indicated in the record, their bail was revoked and they returned to jail in Barbados in 2011. Scantlebury, Gaskin, and Hawkesworth remained incarcerated in Barbados from 2011 until the indictments were dismissed on January 9, 2014.

In support of its requests for extradition from Barbados, the U.S. Government submitted affidavits written by a Senior Trial Attorney in the Criminal Division of the Department of Justice ("Trial Attorney"), a Drug Enforcement Administration ("DEA") special agent, and the confidential informant. The Trial Attorney's affidavit stated that the evidence against the defendants included the testimony of the confidential informant and of DEA agents, audio and video recordings of

conversations, photographs, telephone records, passport records, airline records, and seized cocaine. The DEA special agent's affidavit stated that 184 kilograms of cocaine, packed in a shipment of frozen seafood, was seized at JFK Airport on September 20, 2003, and that, later that day, the confidential informant met with Sugrim and Hawkesworth, who said that they had lost a load of 180 kilograms of cocaine that had been shipped to JFK. The DEA affidavit also noted that the confidential informant "was told that nobody was arrested." J.A. 132. In addition, the DEA affidavit noted that the confidential informant had worked with the DEA for approximately five years and had proven to be "completely reliable." *Id.* at 129.

In support of its request for extradition of Douglas, U.S. Government officials made several additional statements attesting to the reliability of the confidential informant. *Id.* at 160. Douglas was extradited from Trinidad to the United States in October 2005. It was later determined, however, that several of the Government's claims made in support of the confidential informant's reliability were not true. *See id.* at 225–31. In February 2007, the U.S. Government moved to dismiss without prejudice the District of Columbia indictment against Douglas. The motion was granted by the District Court.

The Government subsequently filed a second indictment against Douglas, Hawkesworth, and Sugrim in the Eastern District of New York on narcotics and use of telephone charges. In the New York case, the Government acknowledged that there were inaccuracies in the materials that it had submitted supporting Douglas's extradition. Douglas ultimately pled guilty to a telephone charge and was sentenced to time served. *See id.* at 276.

In November 2013, Gaskin consented to extradition to the United States, but he was never extradited. Instead, on December 24, 2013, the U.S. Government filed a motion to dismiss without prejudice the District of Columbia indictment against Scantlebury, Gaskin, Hawkesworth, and Sugrim pursuant to Rule 48(a) of the Federal Rules of Criminal Procedure ("Rule 48(a)"). The Government explained that its motion was made "in good faith" based on "the age of the case, government resources, and other factual and legal issues which indicate the case is no longer viable." *Id.* at 41. Approximately two weeks later, on January 9, 2014, the District Court granted the Government's motion and the defendants were released from Barbadian custody. *See id.* at 345.

In 2015, the Barbadian defendants filed civil actions against the United States and certain federal officers. *See* Complaint, Gaskin v. United States, No. 15-cv-23-EGS (D.D.C. Jan. 8, 2015); Complaint, Gaskin v. May, No. 15-cv-33-EGS (D.D.C. Jan. 9, 2015). The criminal case arising out of the District of Columbia indictment was subsequently unsealed in September 2015. *See* J.A. 20–21. In February 2016, the Barbadian defendants moved in the criminal case for alteration of the dismissal of the indictment from a dismissal without prejudice to a dismissal with prejudice. *See id.* at 46–92. The defendants argued that they were innocent of the charges in the indictment, that the charges harmed their reputations, and that the Government had committed prosecutorial misconduct by swearing to inaccurate statements and failing to timely notify the Barbadian government when the case against the defendants fell apart. *Id.* The motion did not request expungement of the records of arrest or indictment. Instead, the defendants merely sought to "reserve the right to seek the lesser relief" of expungement if the motion requesting dismissal with prejudice was denied. *Id.* at 90. Defendant Hawkesworth

passed away before the District Court ruled on the motion. *See id.* at 24.

The District Court denied the motion to alter the dismissal without prejudice to a dismissal with prejudice, concluding that dismissal with prejudice was not warranted because the defendants "failed to rebut the presumption that the government sought dismissal in good faith and because the circumstances here do not rise to the level of being exceptional." *Id.* at 357. The District Court acknowledged that the defendants had reserved the right to seek expungement and stated that it would "address any such request [for expungement]" if "movants [sought] additional relief following the Court's decision on the pending motions." *Id.* at 366. Appellants moved for reconsideration of the District Court's denial of their motion to alter the dismissal without prejudice to a dismissal with prejudice. Their request for reconsideration was denied. Appellants never filed a motion with the District Court seeking expungement. This appeal followed.

## II. DISCUSSION

Appellants assert that this court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, which gives the courts of appeals jurisdiction over "all final decisions of the district courts of the United States." 28 U.S.C. § 1291. Appellants acknowledge that their standing to appeal is dubious under *Parr*, 351 U.S. at 516, and also *Lewis v. United States*, 216 U.S. 611, 612 (1910) (per curiam) (holding that when a criminal defendant is "discharged from custody he is not legally aggrieved and therefore cannot appeal"). *See* Appellants' Br. at 27. Appellants argue, however, that they have suffered "ongoing reputational injury from the indictment . . . and thus [have] standing to seek to convert the dismissal *without*

prejudice into a dismissal *with* prejudice that would exonerate them of wrongdoing and redress those ongoing injuries." *Id*. at 28–29.

The Government contends that "[t]his Court should dismiss the appeal for lack of appellate jurisdiction." Appellee's Br. at 13. In support of this position, the Government asserts, first, that "[t]he Supreme Court has squarely held that the dismissal of an indictment without prejudice is not an appealable order"; second, "[a] defendant whose indictment is dismissed is not injured by that ruling, even if he still faces potential prosecution, suffered reputational harm from the indictment, and was deprived of liberty as a result of the charges"; and, finally, that "[a] dismissal without prejudice [] is an interlocutory order" that is subject to review only "after trial on a new indictment, conviction, and sentencing." *Id*. at 13–14.

The matters at issue in this case concern the jurisdiction of the court. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) ("[E]very federal appellate court has a special obligation to satisfy itself . . . of its own jurisdiction.") (internal quotation marks omitted). Therefore, we address the issues *de novo*. *See Safari Club Int'l v. Jewell*, 842 F.3d 1280, 1285 (D.C. Cir. 2016).

On the record before us, we hold that this court has no basis upon which to entertain this appeal. Appellants lack standing to appeal because they were not aggrieved by the dismissal without prejudice; the statute of limitations has run on the charges against Appellants, so the question regarding whether they face a threat of subsequent prosecution is moot; and they have asserted no viable grounds for redress of their alleged reputational injuries. In light of these holdings, we need

not decide whether the District Court's dismissal without prejudice was "final" for the purposes of § 1291.

## A. Appellants Lack Standing to Appeal for Lack of Aggrievement

Federal courts may not adjudicate cases unless the parties have a personal stake in the suit, not only at the outset of the litigation but at each successive stage as well. *See Camreta v. Greene,* 563 U.S. 692, 701 (2011). One element of that inquiry is whether, at each stage of the litigation, the party seeking relief can establish the "invasion of a legally protected interest." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). In *Parr*, the Court held that a defendant whose indictment has been dismissed without prejudice is not aggrieved so as to support standing to appeal. 351 U.S. at 516–17.

The defendant-appellant in *Parr* obtained a transfer of the indictment against him to another division within the same district on grounds of local prejudice. *Id.* at 514. The Government then dismissed that indictment and filed a new indictment in another district. *Id.* at 515. Parr appealed the dismissal without prejudice, but the Supreme Court held that Parr could not appeal unless and until he was convicted and sentenced. *Id.* at 516–18.

Taking the initial, dismissed indictment in isolation, the Court held that Parr could not appeal the dismissal for want of standing:

> If the Corpus Christi indictment is viewed in isolation from the Austin indictment, an appeal from its dismissal will not lie because petitioner has not been aggrieved. Only one injured by the judgment sought

to be reviewed can appeal, and, regarding the Corpus Christi proceeding as a separate prosecution, petitioner has not been injured by its termination in his favor. So far as petitioner's standing to appeal is concerned, it makes no difference whether the dismissal still leaves him open to further prosecution, or whether, as petitioner contends, it bars his prosecution elsewhere than in Laredo because the transfer order operated to give him a vested right to be tried only there. The testing of the effect of the dismissal order must abide petitioner's trial, and only then, if convicted, will he have been aggrieved.

*Id*. at 516–17 (citations omitted).

Thus, the Court's holding in *Parr* indicates that, as a general matter, a criminal defendant is not injured, and thus lacks standing to challenge a dismissal without prejudice, unless and until he is subsequently convicted. *See also United States v. Martin*, 682 F.2d 506, 507 (5th Cir. 1982) (per curiam) ("Any testing of the dismissal order must abide the outcome of a trial on the issue of guilt. Then, if convicted, the defendants may be aggrieved.").

Appellants argue that, since the decisions in *Lewis* and *Parr*, "federal courts have expanded their appreciation of what constitutes an Article III injury . . . so a century later 'an appeal brought by a prevailing party may satisfy Article III's case-or-controversy requirement.'" Appellants' Br. at 28 (quoting *Camreta*, 563 U.S. at 702). Appellants' cited authority is inapposite to this case.

*Camreta*, for example, was a civil case involving qualified immunity. As the Court explained, "a state child protective services worker and a county deputy sheriff interviewed a girl

at her elementary school in Oregon about allegations that her father had sexually abused her. The girl's mother subsequently sued the government officials on the child's behalf for damages under Rev. Stat. § 1979, 42 U.S.C. § 1983, claiming that the interview infringed the Fourth Amendment." 563 U.S. at 697. The Court of Appeals ruled that the public officials had violated the Constitution, but that qualified immunity protected the officials from liability.

The Supreme Court held that the public officials in *Camreta* had standing to seek review because they retained a "necessary personal stake in the appeal," given that the ruling could still "have prospective effect on the parties." *Id.* at 702. The Court explained:

> [The] Article III standard often will be met when immunized officials seek to challenge a ruling that their conduct violated the Constitution. That is not because a court has made a retrospective judgment about the lawfulness of the officials' behavior, for that judgment is unaccompanied by any personal liability. Rather, it is because the judgment may have prospective effect on the parties. The court in such a case says: "Although this official is immune from damages today, what he did violates the Constitution and he or anyone else who does that thing again will be personally liable." If the official regularly engages in that conduct as part of his job (as Camreta does), he suffers injury caused by the adverse constitutional ruling. So long as it continues in effect, he must either change the way he performs his duties or risk a meritorious damages action.

563 U.S. at 702–03.

In *Camreta*, the defendants had the "necessary personal stake" in the outcome of the appeal because they would be compelled to alter their future conduct to comply with the judgment. Appellants have not argued that they have been affected similarly in this case, nor do they have any basis upon which to do so.

The Government also argues that Appellants cannot appeal the dismissal without prejudice because it does not constitute a final decision for the purposes of 28 U.S.C. § 1291. In *Parr*, the Court held that the appeal was premature because the subsequent indictment was still pending at the time of appeal. *See Parr*, 351 U.S. at 518–19. In so doing, the Court broadly stated that "[f]inal judgment in a criminal case means sentence." *Id*. at 518 (quoting *Berman v. United States*, 302 U.S. 211, 212 (1937)).

In this case, however, unlike *Parr*, no subsequent indictment was handed down. And the statute of limitations on the charge against Appellants expired before oral argument. At oral argument, counsel for the Government confirmed that the Government would not seek a further indictment. Therefore, the judgment in this case is as final as it will ever be. Under these circumstances, there is reason to doubt whether *Parr*'s finality holding is applicable.

The Supreme Court in *Parr* took pains to address the first and second indictments in that case independently, treating the first, dismissed indictment as unappealable for lack of injury, while separately holding that the subsequent indictment was not yet appealable for lack of finality. And at least one of our sister circuits has made the same distinction. *See United States v. Moller-Butcher*, 723 F.2d 189, 191 (1st Cir. 1983) ("If [the defendant] is not reindicted, it will never have suffered injury as a result of the dismissal. If, on the other hand, [the defendant]

is reindicted, then the dismissal is an intermediate step in the prosecution which may be reviewed only after final judgment in the case.").

It is unnecessary for us to decide whether *Parr*'s finality holding applies to this case. On the record before us, it is clear that, under *Parr*, Appellants were not aggrieved by their dismissals without prejudice. Therefore, they have no standing to pursue this appeal.

## B. Appellants' Challenges to the Dismissals of Their Indictments Without Prejudice Are Moot

We also lack jurisdiction over this appeal because the claims raised by Appellants are moot. "When 'subsequent events ma[ke] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur,' we have no live controversy to review." *Camreta*, 563 U.S. at 711 (alteration in original) (quoting *United States v. Concentrated Phosphate Export Ass'n, Inc.*, 393 U.S. 199, 203 (1968)).

The parties agree that the statute of limitations has run on the drug trafficking charge pursuant to which Appellants were indicted. *See* Appellants' Br. at 28 n.8 (noting that, even if the statute of limitations was tolled pending extradition, the five-year statute of limitations expired on January 13, 2019). Therefore, there is no possibility that Appellants will be indicted for the same alleged offenses that gave rise to this case. The elimination of exposure to re-indictment moots Appellants' objections to the form of the dismissal. *See Lewis*, 216 U.S. at 613; *see also Parr*, 351 U.S. at 517 & n.8 (discussing the finding of mootness in *Lewis*).

**C. Due to Lack of Redressability, Appellants Lack Standing to Support Their Claims of Reputational Injuries**

Appellants argue that they have standing to pursue this appeal because of alleged "ongoing reputational injury from the indictment." Appellants' Br. at 28. In support of this assertion, Scantlebury and Gaskin submitted declarations to the court reciting reputational harms that continue to adversely affect their job opportunities, limit their abilities to secure bank loans, and make it difficult for them to visit the United States. Each Appellant claims that "[a]n order of this Court dismissing [his] indictment with prejudice – or less preferably, expunging [his] arrest record – would enable [him] to claim that the indictment was in error because [he] was not guilty of the charges and would remove an obstacle" to re-establishing his reputation or returning to the United States. J.A. 106, 109.

On the record before us, we hold that the reputational injuries alleged by Appellants do not give them standing to appeal. This is because the relief that Appellants seek – an alteration of the dismissals without prejudice to dismissals with prejudice – would not redress the injuries that Appellants have alleged.

In order to establish standing, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 43 (1976)). Appellants argue that a favorable ruling from this court that "the United States charged them without probable cause would redeem their reputations" and that, with respect to Gaskin, "striking the arrest would prevent U.S. immigration officials from using the fact of the arrest against him in the discretionary processing of his planned application to apply to

return to the United States." Appellants' Br. at 29. These arguments are premised on a misunderstanding of Rule 48(a), which allows the prosecution to dismiss an indictment only "with leave of court." Fed. R. Crim. P. 48(a).

"[T]he 'leave of court' authority gives no power to a district court to deny a prosecutor's Rule 48(a) motion to dismiss charges based on a disagreement with the prosecution's exercise of charging authority." *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 742 (D.C. Cir. 2016). Rather, a trial court "reviews the prosecution's motion under Rule 48(a) primarily to guard against the prospect that dismissal is part of a scheme of 'prosecutorial harassment' of the defendant through repeated efforts to bring—and then dismiss—charges." *Id.* (quoting *Rinaldi v. United States*, 434 U.S. 22, 29 n.15 (1977)). Therefore, a finding that the District Court erred in applying Rule 48(a) would not constitute a holding in Appellants' favor that the Government charged them without probable cause. Nor would a favorable holding have any impact on the records of Appellants' arrests and indictments.

The problem for Appellants is that their alleged reputational injuries stem from their arrests and indictments, not from the District Court's application of Rule 48(a). Neither the trial court nor this court may second-guess an indictment that is "'fair upon its face,' and returned by a 'properly constituted grand jury.'" *Kaley v. United States*, 571 U.S. 320, 328 (2014) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 117 n.19 (1975)); *see also id.* ("The grand jury gets to say—without any review, oversight, or second-guessing—whether probable cause exists to think that a person committed a crime."). Therefore, absent a meritorious challenge to their indictments, we lack the authority to afford Appellants the relief that they seek.

Had Appellants sought expungement of their indictment and arrest records, rather than dismissal with prejudice, the redressability analysis might have been different. But Appellants did not move for expungement before the District Court and they have not requested it before this court.

The remedy of expungement is available only if "necessary to vindicate rights secured by the Constitution or by statute." *Abdelfattah v. DHS*, 787 F.3d 524, 536 (D.C. Cir. 2015) (quoting *Chastain v. Kelley*, 510 F.2d 1232, 1235 (D.C. Cir. 1975)); *see also id.* at 538 ("[We do not] recognize a nebulous *right* to expungement of government records that are inaccurate, were illegally obtained, or are 'prejudicial without serving any proper purpose;' instead expungement is a potentially available *remedy* for legally cognizable injuries."). Appellants have made no attempt to satisfy this standard.

In sum, the remedy sought by Appellants, if granted, would not redress their alleged reputational injuries. Therefore, Appellants lack standing to pursue these claims.

## D. The Court Has No Jurisdiction to Consider Appellants' Claims Under the Declaratory Judgment Act

Finally, Appellants request declaratory relief from this court under the Declaratory Judgment Act, 28 U.S.C. § 2201. However, the Declaratory Judgment Act does not extend the jurisdiction of the federal courts. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) ("[The Declaratory Judgment Act] enlarged the range of remedies available in the federal courts but did not extend their jurisdiction."). Having concluded that we lack jurisdiction over this appeal on injury, mootness, and redress grounds, we further conclude that we

lack jurisdiction to consider Appellants' request for declaratory relief.

### III.  CONCLUSION

For the reasons stated herein, these appeals are dismissed.

*So ordered.*